BENEDICT JACOBELLIS AND DOLORES JACOBELLIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jacobellis v. Commissioner
Docket No. 34197-85.
United States Tax Court
T.C. Memo 1988-315; 1988 Tax Ct. Memo LEXIS 335; 55 T.C.M. (CCH) 1317; T.C.M. (RIA) 88315; July 25, 1988. Lawrence A. Berger, for the petitioners. Catherine R. Chastanet, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1]
1976
$ 25,586
$ 1,329
1977
9,289
464
1978
2,310
116
The issues for determination are whether petitioner Benedict Jacobellis had unreported partnership income during the years in issue and whether petitioner Dolores Jacobellis is entitled to relief as an innocent spouse. FINDINGS OF FACT Some of the facts have been *336 stipulated, and the stipulated facts are incorporated in our findings by this reference. [2] Petitioners were residents of Hauppauge, New York, at the time they filed their petition. Prior to the years in issue, Benedict Jacobellis (petitioner) and Peter M. Arato (Arato), Nicholas Bartolomeo (Bartolomeo), and Kenneth Kahn (Kahn) formed partnerships in three gasoline service stations known as Sayville Getty, West Sayville Mobil, and Ronkonkoma Gulf. Petitioner was also a 25-percent shareholder in the subchapter S corporation known as Busy Bee Oil Company, Inc.; Arato, Bartolomeo, and Kahn were the other shareholders in the corporation. Petitioner and Kahn, who both had prior *337 experience working for an oil company, were responsible for operations of the service stations. Arato set up the stations and participated in promotion of sales. Bartolomeo controlled the financial aspects of the business including supervising bookkeeping, tax reporting, and similar functions. On or about April 15, 1977, Forms 1065, U.S. Partnership Return of Income, were filed for Sayville Getty, West Sayville Mobil, and Ronkonkoma Gulf. Each of those returns was prepared by Bernard Goldowitz and signed by petitioner as a partner. Schedule M of each return showed the number of partners as "2." Attached to each return as filed were Schedules K-1 showing distribution of 50 percent of the profit or loss to petitioner and 50 percent of the profit or loss to Kahn. On or about April 15, 1977, petitioners filed a Form 1040, U.S. Individual Income Tax Return, for 1976. On that return petitioners reported, among other things, partnership income and loss including amounts equivalent to the 50-percent distribution of income or loss shown on the Forms 1065 filed by the three partnerships. On or about September 15, 1977, petitioner, Arato, Bartolomeo, and Kahn executed a written agreement *338 relating to their common interests in various service stations. The agreement was prepared by Bartolomeo's attorney. Among other things, the agreement recited that: B. NICK [Bartolomeo], KEN [Kahn], PETE [Arato] and BEN [Jacobellis] are equal partners and each are entitled to Twenty-Five (25%) percent of the profit or loss and each own Twenty-Five (25%) percent of the partner's equity of * * * SAYVILLE GETTY, WEST SAYVILLE MOBIL, RONKONKOMA GULF * * *
The agreement also contained recitals of corporate ownership and leases of certain properties and continued: Q. The parties to this Agreement wish to set forth their understandings, provide for continuity of their various interests, establish a value for such interests and provide for continuity in the event of the death of an individual party to this Agreement. NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereto agree, as follows: FIRST: All leases in the name of the corporate parties to this Agreement, all rents, rebates, competitive allowances, profit from operations earned or received by any corporate party to this Agreement are and shall be the property *339 of the corporate parties. Any lease, rebate, rent, competitive allowance, salaries, compensation, other distributions and allowances or profit from operations belonging to or received by and individual party to this Agreement shall be received or held as nominee and the beneficial interest shall belong to NICK, KEN, PETE and BEN in equal shares of Twenty-Five (25%) percent each. The balance of the agreement was consistent with 25-percent interests of each of the four partners in Sayville Getty, West Sayville Mobil, and Ronkonkoma Gulf. In a rider to the agreement, the parties recited that they had either terminated or were in the process of terminating partnerships including West Sayville Mobil. During the years in issue, the number of gallons of gasoline sold and miscellaneous income of the service stations, such as cigarette sales, were recorded on monthly sheets. "Profit" was computed based on the number of gallons sold and the percentage of profit per gallon, and the amount so computed was divided among the four partners in equal shares. Partnership funds deposited into business bank accounts were controlled by Bartolomeo and Arato and sometimes included transfers from *340 other entities in which Bartolomeo had an interest. The books and records of the entities were kept in Bartolomeo's offices by persons subject to Bartolomeo's control. In relation to the business arrangements between them, Bartolomeo agreed to indemnify petitioner and Kahn for unpaid income taxes. The partners had a falling out when Bartolomeo and his attorneys failed to provide a written indemnification contract. Prior to November 1982, the Internal Revenue Service commenced an examination of returns filed by the three partnerships and the subchapter S corporation (and other related entities). Kahn, on behalf of the entities, executed a power of attorney authorizing Michael Santoli (Santoli), an accountant with the firm of Mason Raich & Co., to act on behalf of the entities in relation to Federal tax examinations for 1976 through 1979. Santoli learned during the audit that an Internal Revenue Service agent was questioning various bank deposits of the entities. Unable to secure documentation that would negate the includability in income of various deposits, on June 13, 1983, Santoli agreed to increases in reportable income of the three partnerships and the subchapter S corporation. *341 During the course of the audit, petitioner became aware that the Internal Revenue Service was proposing to increase his taxable income by 50 percent of the partnership income. In November 1982, petitioners received a letter from the Internal Revenue Service, which stated in part as follows: To date we have not received your protest to the tax adjustments proposed by our examiner. You have also not returned to us the extension Forms 872 mailed to you on September 9, 1982 for your signatures to consent to extend the statutory period to December 31, 1983 for the taxable years December 31, 1976, 1977 and 1978.
In response, on November 26, 1982, petitioner wrote to the Internal Revenue Service as follows: This is to inform you that the accountant firm of Mason & Rietch [sic] in Great Neck, N.Y. is handling the tax audit and review on the corporate books for period in question. Thank you for your patience in this matter and feel free to contact me at my home phone if necessary. As a result of the adjustments agreed to by Santoli, the Commissioner sent a statutory notice to petitioners with the following explanation of adjustments: a) Your share of the West Sayville Mobil *342 Partnership income for the tax years 1976 and 1977 is $ 33,776.00 and $ 20,770.00 respectively instead of $ 1,323.00 and ($ 1,961.00) respectively. Therefore, your taxable income is increased $ 32,453.00 and $ 22,731.00 respectively, under Section 61 of the Internal Revenue Code, based upon your 50% ownership. b) Your share of the Sayville Getty Partnership income for the tax year 1976 is $ 25,589.00 instead of $ 5,085.00. Therefore, your taxable income is increased $ 20,504.00 under Section 61 of the Internal Revenue Code, based upon your 50% ownership. c) Your share of the Ronkonkoma Gulf Partnership income for tax year 1976 is $ 9,854.00 instead of ($ 1,230.00). Therefore, your taxable income is increased $ 11,084.00 under Section 61 of the Internal Revenue Code, based upon your 50% ownership. d) Your share of the Busy Bee Oil Company, an 1120S corporation for the tax years 1977 and 1978 is $ 6,347.00 and $ 12,767.00 respectively, instead of ($ 24.00) and $ 1,988.00 respectively. Therefore, your taxable income in 1977 is increased $ 6,371.00 and your tax table income in 1978 is increased $ 10,779.00.
Deductible *343 medical expenses were adjusted as a result of the increase in petitioners' income. Petitioner's actual cash distributions from the partnership did not include the unexplained deposits that were the basis of the Commissioner's determination of unreported income. Delores Jacobellis was not involved in the service station businesses or otherwise employed. During the years in issue, petitioner provided support for the family and, during 1977, for his father. Delores Jacobellis did not know, or have reason to know, that the partnerships and the subchapter S corporation had any unreported income. The unreported income of the partnerships and of the subchapter S corporation was not actually received by petitioners. It would be inequitable to hold Mrs. Jacobellis liable for the deficiencies and additions to tax in issue. OPINION Petitioners have the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. They presented no evidence that would negate respondent's determination that the entities had unreported income, and the duly authorized agent of the entities *344 had executed agreements increasing the taxable income of each of them. Petitioner had, by letter, indicated that the agent, Santoli, was also acting on his behalf. In the petition, and prior to trial, petitioners claimed that they should be held liable for 25 percent of the entity income, rather than 50 percent as determined by respondent. They denied that Santoli was authorized to agree to adjustments on their behalf. In their post-trial brief, petitioners contend that the unexplained deposits were not income. That argument is totally unsupported by the evidence and is belated. To the extent that respondent determined income at the entity level, there is no evidence that the determination is erroneous. The issue of petitioner's share of the partnership income, however, is more complex. Petitioner and Kahn testified that each of the four partners was to have a 25-percent share from the inception of the partnership. Bartolomeo and Arato testified, unpersuasively, that the writing prepared by Bartolomeo's lawyer did not reflect their actual agreement. Bartolomeo and Arato each testified that Jacobellis and Kahn were supposed to receive a certain level of income equivalent *345 to their earnings from their prior employer before the profit was to be divided equally among the four. Neither Bartolomeo nor Arato, however, could recall the alleged level of income to which profits were to be split only between Jacobellis and Kahn. The parties agree that the testimony of Arato and Bartolomeo was not credible. The evidence supports a conclusion, therefore, that among the partners, the profits were to be divided four ways with each partner receiving 25 percent. The documentary evidence and the testimony of petitioner and Kahn, however, also permit an inference that the four partners agreed that the two partners in lower tax brackets, petitioner and Kahn, agreed to report income for tax purposes as if each were 50-percent partners and that Bartolomeo would indemnify them from any tax liability created from this agreement. Petitioner testifies that the Schedules K-1 were not attached to the partnership tax returns, Forms 1065, when he signed them and that he was told by the preparer that they reported his 25-percent share. The returns reported that there were two partners, however, on Schedule M, which is the fourth page of the Forms 1065 signed by petitioner. *346 In addition, petitioner must have had the Schedules K-1 before he filed his own tax returns reporting the amount computed as 50 percent of the partnership income. Petitioner was not asked at trial about Schedule M of the Forms 1065, and we decline to find that he was unaware of the contents of the partnership returns. In any event, his signature on the returns was a declaration under penalty of perjury that he had examined the returns, including accompanying schedules and statements, and believed them to be true. We are not persuaded that he should be permitted to disavow the representations on the returns. Under all of the circumstances, petitioner may have been a victim of his deal with Bartolomeo and Arato, but the most reasonable interpretation of the evidence is that Bartolomeo reneged on an agreement with respect to taxes rather than misled petitioner at the inception or at the time returns were filed. Under these circumstances, petitioner cannot be allowed to rely on an agreement of the partners contrary to the agreement reported to the Internal Revenue Service on the returns filed by petitioner for the partnership. See Maletis v. United States,200 F.2d 97, 98 (9th Cir. 1952); *347 Haag v. Commissioner,59 F.2d 514 (7th Cir. 1932), affg. 19 B.T.A. 982 (1930). Petitioner's testimony also supports, rather than negates, respondent's determination of the additions to tax for negligence in this case. He claims that he relied on statements of the preparer that his distributive share was reported as 25 percent of the partnership income. Simple comparison of the partnership return and his individual return would have shown that the distributive share reported on his individual return was 50 percent of the income reported by each partnership. Either he neglected to make that comparison and was thus negligent, or he testified falsely in this case. He also testified that he was aware of Bartolomeo's use of the partnership bank accounts for funneling moneys belonging to other entities. He has certainly not proven that respondent's determination of additions to tax was erroneous. Dolores Jacobellis, on the other hand, was not involved in the partnerships and apparently had no knowledge of the arrangements between petitioner and his partners. Petitioner's actual distribution from the partnerships did not include the amounts determined *348 by respondent to constitute unreported income. Although respondent questions whether petitioner's family could have survived on the small amounts of income reported, there is no evidence refuting their testimony that they did. Taking into account all the facts and circumstances, we conclude that it is inequitable to hold Mrs. Jacobellis liable for the deficiency in tax in this case, and that the other requirements of section 6013(e)(1) have been met. Decision sill be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect during the years in issue.↩
2. The parties' briefs were essentially useless in the fact-finding process. Petitioners' brief was late and totally failed to comply with Rule 151(e), Tax Court Rules of Practice and Procedure. Petitioners did not file a reply brief as ordered by the Court. Respondent's proposed findings of fact did not comply with Rule 151(e)(3), Tax Court Rules of Practice and Procedure↩, in that they consisted in large part of recital of testimony and discussion or argument relating to the evidence or the law.